**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Sunset Cliff, Inc.     }
                                   }
                                 }      Docket No. 26-2-01 Vtec
                                 }
                                 }

<u>Decision and Order on Pending Motions</u>

This is a closed appeal in which Appellant Sunset Cliff, Inc. appealed from a decision of the Development Review Board (DRB) of the City of Burlington granting final plat approval to Appellee-Applicant Keystone Development Corp. for construction of a planned residential development. In the litigation which concluded in Environmental Court by a decision issued on April 18, 2003, Appellant Sunset Cliff, Inc. (Sunset Cliff) was represented by Liam L. Murphy, Esq. and Lisa B. Shelkrot, Esq.; Appellee-Applicant Keystone Development Corp. (Keystone) was represented by Vincent A. Paradis, Esq.; and the City was represented by Kimberlee J. Sturtevant, Esq.

On August 2, 2004, under the above-captioned docket number, Sunset Cliff (now represented by Robert B. Hemley, Esq.) filed a motion " to enforce this Court's order issued April 18, 2003 and to enjoin any development work until all permits are issued." The motion asserted, without affidavits, that a principal of Keystone had retained the company Green Mountain Chipping to remove trees from the northeast woods on the property, and that the trees to be removed were to be identified as those in the tree removal plan that was the subject of the above-captioned litigation and the Court's April 2003 order.

Copies of the motion were provided to Attorney Sturtevant and to Attorney John W. O" Donnell, Esq. A telephone hearing was held before Judge Crawford, in Judge Wright's absence, at which Attorneys Hemley and Sturtevant participated. Attorney O" Donnell informed Attorney Hemley and the Court that neither he nor anyone else in the firm of Bergeron, Paradis & Fitzpatrick had yet been authorized to represent Keystone on this matter, and did not participate in the hearing. The hearing resulted in the issuance of an order on August 2, 2004 that the April 2003 order 'shall be fully enforced and respected by all parties' and that Keystone not " undertake any development work or site activity in furtherance of the proposed development of the site which is the subject of" the April 2003 order. The allegations contained in the motion related to the removal of trees in the northeast quadrant of the property.

On August 9, 2004, Attorney Paradis entered his and Attorney O" Donnell's appearance on behalf of Keystone in this matter and moved that the Court dissolve what they characterized as " the temporary restraining order issued August 2, 200[4]." His cover letter specifically requested the Court Manager to " direct this filing to Judge Crawford, since I believe he continues to preside over the order." On August 11, 2004, Attorney Williams filed with the Court a letter stating that Attorney Hemley will be out of the office and out of the country until August 30, 2004, and requesting that Attorney Hemley be given until September 7, 2004, to file a written response opposing the motion to dissolve. Attorney Williams' letter also requested that the Court " confirm in its scheduling order that the August 2, 2004 Order will remain in effect pending a final decision on the Motion to Dissolve."

Judge Crawford was first available to review the August 9 and 11 filings on his return on August 18, 2004, at which time he issued an entry order referring the matter back to " the regular Environmental Court Judge." He did not address the request to postpone the matter to

accommodate Attorney Hemley's absence. The earliest time available in Judge Wright's calendar to hear argument on the pending motions (after this August 18, 2004 entry order) was Monday, August 23, 2004, as she was in trial the full days of August 19 and 20. It was therefore scheduled for a telephone hearing at noon on August 23, 2004. Attorneys Paradis, O" Donnell, Williams and Sturtevant participated in the telephone hearing, which was recorded on audio tape.

As to the tree retention plan and the grove of large pine trees in the northeastern quadrant of the site, the Court's April 2003 decision stated as follows on pages 12-14 of the decision:

The tree retention plans for the areas to be disturbed show all trees at least 10 inches in trunk diameter, but do not show the sizes, species or tree types except for the trees to be retained. Some 435 trees over 10" in diameter are shown on the plans as being removed [footnote deleted questioning whether some of the trees shown as being retained would in fact survive] for the project, many of which are located in the grove of large pine trees in the northeastern quadrant of the project. This quadrant contains much of the site's upland (non-wetland) area, and it is understandable that the development of the site is concentrated in this area. However § 28-7(b)(9) [footnote deleted] of the Subdivision Regulations first requires that the grove of trees 'shall be preserved as far as possible by harmonious design," and also requires that all types of trees over 10" in diameter be preserved, unless it can be demonstrated " that retention of any such tree is not appropriate."

Appellee-Applicant's project engineer described the tree retention plan generally as having been designed to keep existing trees " where practical," but focused on the three-trees-per-unit requirement of § 28-7(b)(6), rather than on the tree or grove preservation requirements of § 28-7(b)(9). Appellee-Applicant did not show that the project itself was designed, in the area of the grove of trees, to preserve the grove of trees " as far as possible." Appellee-Applicant did not show that any consideration was given to determining the placement or design of any of the buildings or parking areas (or to reducing the number or size of buildings or number of units), so as to preserve the grove of trees in the northeast quadrant of the site, or even so as to avoid having to remove certain of the larger trees within that grove, or to minimize the number or importance, to the grove as a whole, of the specific trees that would have to be removed.

Appellee-Applicant provided an analysis by a forester of the five largest [footnote deleted] trees, showing that they are not healthy and suffer from ice storm damage. However, even if the retention of those particular five trees is not appropriate, for the remaining 430 trees over 10" in diameter slated for removal, Appellee-Applicant has not demonstrated that retention of any of those trees is " not appropriate," as required by § 28-7(b)(9) of the Subdivision Regulations. Appellee-Applicant has not sought or obtained a waiver of that provision from the DRB and City Council under § 28-11 of the Subdivision Regulations. Accordingly, neither the overall layout and design of the proposed PRD, nor the tree retention plan, can be approved as designed under § 28-7(b)(9) of the Subdivision Regulations.

The April 2003 decision concluded that the project could not be approved as designed, under the then-existing City ordinances, and therefore denied the application, specifically " without prejudice to any further application addressing the issues discussed in this decision, in particular regarding the layout and design of the project, the tree removal plan, protection of the pine grove, . . . [and other listed issues, and]. . . without prejudice to any future application for a smaller or differently designed proposal on the property that addresses the requirements of the City's zoning ordinance and subdivision regulations." While the Court understands that the City was at one time working on revisions to its subdivision regulations, no party has disclosed whether any revisions have yet been proposed for public comment.

Because the April 2003 decision concluded the appeal then before the Court, Keystone is correct that Docket No. 26-2-01 Vtec does not provide a basis for a mandatory order in and of itself. That is, the April 2003 decision in that appeal did not require Keystone to take any particular

enforceable action; rather, it simply denied the then-pending permit application, for a number of reasons including the inadequacy of the tree removal plan and the need to address the protection of the pine grove under the City's then-subdivision regulations.

We do not now address the extent to which a landowner may manage or determine to cut or cull large trees on land not proposed for development. On the other hand, if this land is being or will be again proposed for development, Keystone could damage its future prospects for approval of a new application if Keystone were not able to address those issues of a tree preservation plan and the preservation of natural features (such as the grove of pines) under the City's subdivision and zoning ordinances in effect at such time as it may make a new development application. This Court in this case has no evidence as to what current regulations, if any, may apply within the City relating to this grove of trees.

It remains possible that actions by Keystone to remove trees, if done in preparation for further land development, could have supported (or could still support) a new complaint under 24 V.S.A. § 4470(b) (formerly § 4470(c)), either by Sunset Cliff or by the City, to enforce the Court's April 2003 rulings regarding revisions to the tree removal plan or the pine grove in advance of any new purported development of the parcel. If such a new case had been filed or is to be filed, the ordinary requirements for preliminary injunctive relief or TRO would apply, with their requirements for supporting affidavits and the possibility of a bond (at least if filed by a private entity such as Sunset Cliff).

It remains possible that actions by Keystone to remove trees may or may not in fact fall within the scope of any current City regulation.

It remains possible that actions by Keystone to remove trees, if done in preparation for further land development, could be subject to new enforcement actions by the City under the current version of former 24 V.S.A. § § 4444 and 4445, with whatever prior notice is required under the revised statute.

It remains possible that actions by Keystone to remove trees, if done in preparation for further land development, could be subject to other causes of action for injunctive relief in Superior Court, whether brought by Sunset Cliff or by the City.

Most important for Keystone to consider before going ahead with its plans is the possibility that a tree removal plan in connection with some new intended development may in fact be approvable, if it contains the additional information lacking in the one earlier proposed or if the subdivision regulations have changed in the interim. Yet should Keystone go ahead and remove trees in advance of such an application, without sufficient documentation, it may in the future have difficulty proving that the tree removal done in preparation for some new intended development in fact did meet the requirements of the then-current regulations.

Of course, the cutting of large trees is the prototypical subject for temporary injunctive relief, as they can quickly be cut but cannot easily be regrown. Keystone has the undoubted right to have any such request for injunctive relief tested against the applicable rules of civil procedure, statutes and regulations, including a demonstration of the moving party's right to relief, as well as the question of whether the injury may be irreparable. Accordingly, the August 2, 2004 order of the Environmental Court in the present case will be vacated effective at 3:30 p.m. on Monday, August 30, 2004, and the above-captioned matter will again be closed on the docket of this court.

In the interim, all the parties are advised to file whatever other new actions they may wish to file, in whatever courts may have jurisdiction, and to file any requests for bonds, stays, TROs, preliminary injunctions, damages, or other temporary and permanent relief as may be warranted in such other actions, on or before that date, to avoid last-minute rushes to the courthouse and

consequent disruption of the courts'scheduled work. If a motion for stay of today's order, pending its appeal to the Vermont Supreme Court, is filed by any party (as suggested but not filed by Attorney Williams' letter faxed to the Court this afternoon), we will hold a telephone hearing on that motion at 1:30 p.m. on Monday, August 30, 2004. Any other hearings made necessary by new filings will be scheduled by the court or courts having jurisdiction of the action in which they arise.

Done at Barre, Vermont, this 24th day of August, 2004, at 9:00 a.m.

_____

Merideth Wright

Environmental Judge